Good morning, your honors. May it please the court, Stephen Meyrie on behalf of the United States, also appearing on behalf of the United States and seated at council table is Gregory Brower, the United States attorney for the District of Nevada. In this appeal, your honors, the government seeks a reversal of the dismissal below because the district court should not have compelled the government to grant testimonial use immunity to a defense witness who is also a target of a grand jury investigation. This court has held clearly in Williams, Condo, and Croft that the government exercises its discretion appropriately when it chooses not to grant immunity to a defense witness when there is a prosecutorial interest in that defendant. That is, the defendant, excuse me, in the witness. That is, the witness is either indicted or is the subject of a criminal investigation. Well, all it says is, I thought, the cases say that when there's a bona fide investigation, then there isn't any manipulation by the government because they are pursuing a bona fide investigation. It's not a situation where the government sort of threatens the witness simply to get him not to testify, to invoke his right not to testify. I didn't think there was an exception for a target that's a per se exception for a target. You're right, Your Honor, in the sense that the courts do focus on the government's reasons for its not granting the testimonial use immunity. I think we've captioned it as an exception in that the way to reconcile Williams, Condo, and Croft and those line of cases dealing with the ---- But there's no case that says there is an exception. As I read, I mean, Williams is particularly questionable because it's a habeas case, state habeas case, Woodford. Remember Woodford? She used to be the warden at St. Quentin. Yes, Your Honor. So she shows up a lot. So that's a ---- I mean, it cites direct appeal cases, but it is really sort of reviewing what the district court did, reviewing what the state court did. So it's sort of second level. And I'm not even sure we have authority to order a state court to order the state prosecutor of the grand state use immunity. I'm not even sure that power exists. So Williams says a lot, but I'm not sure how helpful it is to you. Williams does say a lot, Your Honor, and does provide the general premise with respect to the prosecution does not abuse its discretion in the case of a witness who is the subject of a criminal investigation. We look at cross ---- Yes, I do quite get that. What is abuse of discretion? Abuse of discretion is what we do with district judges. I've never heard of a prosecutor abusing his discretion or, you know, applying that test to a prosecutor. I think what is meant by that, Your Honor, is that is the prosecution doing something not in good faith? Are they doing something that is trying to game the system? But this isn't an issue of good faith. There are two types of this kind of issue that are discussed in Judge Biby's opinion. And the first one is where the government is not acting in good faith. The second is when they're discriminating not maybe in good faith or bad faith. It doesn't matter where they're treating the government witness differently from the defense witness. It's sort of A and B. And what you're talking about is an A violation where the government is acting in bad faith. This is not a bad faith case. This is a case where you offer your witness a benefit and then you deny the same benefit to the defense witness. This is a case, Your Honor, with respect to whether or not the government is allowed to pursue its prosecutorial interest in the witness and whether or not the district court in its ruling has moved into the prosecutorial function. The government has to be ---- Well, no more than in our main case, we moved into that function in Straub. In Straub, we moved into your function about what you could do with a witness. But, Your Honor, in Straub, there was no prosecutorial interest in that witness. In fact, Judge Bybee, in that opinion, was very quick to point out that the prosecution denied use of immunity to one defense witness who could have discredited Adams' testimony. This was the government immunized witness. Even though the prosecution claimed it had no interest in prosecuting that witness. And in Straub, the facts are very clear that the government represented to the court over and over again that it had no interest in the defense witness, that it was not even on, quote, its radar screen. Here, it's a much different set of circumstances. Cavens was identified in this indictment as Dr. K as being involved in the scheme to defraud. Cavens had been served a subpoena in mid-July or, excuse me, mid-2005. It was clear that he knew that he was a target based on the declaration from his own defense counsel. Were he and Thalgott in any different circumstances? I'm sorry, Your Honor. Were he and Dr. Thalgott in any different circumstances? Yes, Your Honor. In this sense, Dr. Cavens was the object of this fraud was Melody Simon. She was the victim in this case. Dr. Cavens was entrusted with her care during the time that she suffered injury from complications resulting from the first surgery. So Dr. Thalgott was her primary care physician early on in her care. After the initial surgery, which was performed by both Dr. Thalgott and Dr. Cavens, Thalgott left for vacation, then perceived the whole series of events, which became the whole object of the fraud here, and that is the malpractice that, as the government alleges, that Dr. Cavens engaged in and was subsequently covered up and sold down the river on Melody Simon. So Thalgott could only testify as to his first surgery. All the events that Cavens talks about, Thalgott was not involved in with respect to her care. Thalgott and Cavens were together during the meeting that never happened. This was subsequent after Gage's involvement in the case, where Cavens and Thalgott met with Gage. Now, at that point, are they similarly situated? They are not similarly situated in the sense that they don't both identically or they don't testify to all the same events, if I'm understanding the court's question. What I'm getting at is they were under the scheme, as I understand how you've alleged it, they were in cahoots together to stick it to the anesthesiologist. That's correct, Your Honor. They had agreed among themselves that they were going to try to pass this buck, if you will, away from them. Okay. Now, if that's the wrongdoing here, why is Cavens any more or less culpable than Thalgott? Cavens is ñ well, Thalgott is culpable, yes, Your Honor. Okay. The government granted Thalgott immunity. Right. That's what I'm getting at. How do you justify granting one immunity and not the other? It's a choice, Your Honor. Every prosecutor faces, especially in white-collar cases, as this court knows, I know I'm preaching to the choir on this, but in many cases, someone comes to the government with information early on, and the choice the government is faced with is, am I going to forfeit the prosecution on this person to get testimony? Well, you didn't have to give him transactional immunity. Well, Your Honor, practically speaking, once we gave him testimonial use immunity, it was impossible for us to prosecute him. But you already gave that to Cavens when he had his free talk, didn't you? No, sir. We gave him a proffer agreement, which allowed us to make derivative use of his testimony. But no use of what he said. We could not use his statements against him at a subsequent trial. Why couldn't you give Cavens the same thing for trial? Your Honor, because the defense requested testimonial use immunity. Well, whatever they requested, why didn't you give him the same kind of immunity you gave him at the free talk? Well, because I don't think that would have been acceptable to his lawyer. Well, maybe you would, maybe you wouldn't. But, I mean, you offered him they asked for some kind of use immunity. You already gave him a form of use immunity. Why didn't you offer him the same form of immunity? Or why shouldn't you have offered him the same form of immunity? It was our understanding from the court's order that we were compelled to give him testimonial use immunity. It's the same immunity that Dr. Balgot got. Let me ask, get at this issue from a slightly opposite direction. Let's say the government had done what Judge Sullivan suggests and said, okay, we can have immunity for everything that comes out of your mouth, but not for any of the follow-up consequences. Could he have still invoked his Fifth Amendment right not to speak at that point? Our position is yes, Your Honor, he could, because the government still would have the immunity. Whereas if you give him use immunity, he can no longer invoke his right not to speak. That is correct, Your Honor, under the statute. That is correct, the 6002. So you can't really, if I understand your answer correctly, is you could not force him to testify by giving him this kind of half, if you can call it sort of a half use immunity. That is correct, Your Honor. He could not be compelled to testify under those circumstances. He could under testimonial use immunity. The district court, in its decision, is our position, greatly minimized the government's interest in future prosecution of cabins. It said that because of this proffer agreement, the government's concern about future prosecution really played no true role in its charging decision. We had represented to the court that this would severely impact our charging decision for all the How do we review that? I mean, you have a trial judge. He's there. He can see the witnesses. He can, you know. And the government says X. And the trial judge, if I understand correctly, says, I don't believe you. Your Honor, I'm not sure the trial judge said he didn't believe us. He said that. You just said that. Well, he said that it played no, well, you're right in the sense that. I mean, you said it played no role, and he says, yes, it did. That sounds to me like a polite way of saying you're lying. I mean, he didn't say it to your face. I'm not saying you are lying. Please. Yes, Your Honor. I'm just saying we have a trial judge who seems to have made a finding that whatever the government proffered wasn't believable. How do we – forget about the substance. Do we review that as a finding of fact for substantial evidence? Do we review it for abuse of discretion? Is it a question of law? We believe it's both abuse of discretion and a question of law in the sense that once the line has been drawn, the courts have shown great reluctance, and in fact haven't shown any indication, that it would then look behind that decision to see whether or not the investigation was going smoothly, what the quantum of evidence was. All those things that the court obviously wouldn't want to be embroiled in, and all of which sort of fall into the prosecution function. So in terms of the review, Your Honor, it's de novo review here, obviously. Let's zoom forward a little bit. I understand from public records that Dr. Kaye has been indicted. That is correct, Your Honor. He was indicted in March of this year. That's a matter of public record. It's not on this record, but it's a public record. And this court may properly take judicial notice. Yes, Your Honor. And I'm having trouble wrapping my head around how this would play out. If they have indicted, if the government has in fact indicted the doctor, could they still grant use immunity for testimony? It's one thing to say, look, there's somebody there who hasn't been indicted and doesn't have his own actual case, but here we've now got a situation that's changed in that the government has actually charged him, and presumably that case is? Yes, sir, that's proceeding to trial. I believe it's due to be filed. There's no stay in place or anything else waiting for this case or anything like that, right? That is correct, Your Honor. And this is precisely why the government contends the court should not get into this area of charging decisions, because here we have a clearly anomalous result. We've got two defendants, co-defendants now, cabins, who have essentially walked. The case has been dismissed, and we have one being tried. The government should not be in a situation, especially in conspiracy cases, where it has to pick and choose among potential defendants based on a decision, a perfectly appropriate decision, to grant immunity. Well, let's say Gage needs to have cabins as a witness. Would the court then, in the Gage case, be authorized to postpone the trial until cabins' case is finished so that cabins can be called as a witness? You know, as I sit here, I don't know the answer to that question, Your Honor. But if possible, I'd like to reserve what little time I have left for any potential rebuttal. With the Court's permission. Okay.  Thank you. We'll hear from the defendants. May it please the Court. Pamela Johnston for Mr. Gage. With regard to the question the Court has asked as to the standard of review here, let's begin there, because the standard of review on all the facts that the Court found is going to be by clear error, according to the Straub case. The legal issues will be decided, of course, by DeNovo. But the judge didn't do anything legally incorrect. So there will be no component of this Court's decision that will be reviewed on a DeNovo standard. Really, it's a review of the record to determine if the Court needs to review it. Unless there is an exception, as the State argues, for a potential defendant in a future case, if the target of prosecution, which is what I understand the basic argument is. Yes, Your Honor. That the Straub case has an exception for a target. It seemed to me that was the issue in this case. That is an issue in this case, Your Honor. Of course, if the Court is going to craft a new answer with regards to targets, create an exception that doesn't otherwise exist in the law in this circuit, then the Court would be making that decision pursuant to a DeNovo review and disagreeing with how Judge Quackenbush reviewed the legal question below. Well, that's what I thought was the primary issue here. But, Your Honor, there's no reason on this record for this Court to make the decision  I'm sorry. I just perhaps disagree slightly with Judge Reinhart's posing of the question, but I thought the Governors argued that we already have an exception for targets and that we are not free to hold otherwise. But that doesn't seem to be consistent with the analysis in Straub, Your Honor. Well, I may have been moving a little more quickly than Judge Kaczynski. That's often the case. I think the Government's clearly wrong as to the theory that we already have an exception. But there's nothing wrong with asking for an exception when the issue hasn't yet been decided. The case we had previously did not involve a target, Straub. So there's nothing wrong with the argument that we should not apply the Straub rule to a target. I mean, when I say there's nothing wrong, I mean, it's a perfectly legitimate request, whether we agree with it or not, it's a different request. And let's back up for a moment and ask, what is the fundamental question that we're really trying to answer here? Can Mr. Gage receive a fair trial? Basic due process question. And when you look at the Straub analysis, it begins and frames the analysis and the question for you, but it doesn't end the analysis. This district court, Judge Quackenbush, with 28 years of experience, he balanced the interests before him correctly. And as Judge Kaczynski said, there was a disagreement between the Court and the Government with regard to the Castigar burden here. The Castigar burden in this case is very slight. This is a – the facts on this case are something this Court will rarely ever see again. If you think about it, there was a full trial. All the trial transcripts were available. There was a full nine-hour proffer with this witness with derivative use being able to be used from that proffer session. There was the information available between the contrast of his counsel, Mr. Chesnoff, talking about what the attorney proffer was. The entire record that this Government had to be able to bring a case against Dr. Cabins was really unusual. It would be very possible for this Court on a Castigar issue to disbelieve, as the district court did, that there was really any merit to the Castigar argument. This was just a mere speed bump that the Government would have to go over to be able to charge Dr. Cabins with the evidence it had available to it. This is not the usual situation that we see in these cases. Let me ask you, Ms. Johnson, let me ask you this. Suppose this is hypothetical, but suppose he were more than a target. Suppose he had already been indicted. Yes, Your Honor. What would be the result there? Could they – could we – could the Court force immunity on him? I think the Court, in the ultimate balance, you'd have to still go through the first two parts of Stroud and then ask the constitutional question. Could a fair trial be had considering both the Government's interests and the defendant's interests? It's not – of course, it's not the case before us. So it's the hypothetical that I know of. Well, it is the case now. But it wasn't the case that Judge Quackenbush decided back in June of 2008. It is a theoretical fact. As the Court knows, in the appellate process, one doesn't look to facts which occur after the district judge makes a decision unless it's to divest the court of jurisdiction or – Depends on the facts, doesn't it? Depends on the facts. But in most circumstances, this Court does not look to facts which occur in the future to decide if the district court got it right or wrong. I mean, if, for example, we were to send the case back now and say, yes, the district judge was right, the Government is required to give immunity, we'd be faced with exactly that situation. Separate cases, separate trials, separately indicted. And separate time periods. Well, but you were – this gets back to the question – I've just gotten you back to the question Judge Silverman asked. Now assume he's been indicted. And can – can – can – can – how did you phrase it? Well, can they force immunity on him if he's more than just a target? They can, Your Honor. The case law that this Court has under 6002, he can be forced to testify because he's been given use immunity as the statute. Do you know of any case where somebody who's been indicted is – has been involuntarily given immunity over the Government's objection? I do not, Your Honor. And there – Or even with the Government, where the Government has forced him to testify in another trial. No, Your Honor. By giving them immunity even though they are under indictment in their own case. It's a little – it's a little awkward, isn't it? I mean, it's one thing to say you take a witness and say, okay, you can – you can sing like a canary on the stand. You don't have to worry about what you say. But the right – But it's different when you've got your own criminal case to deal with. Yes, it is different. But it's – and I'll go back to the basics of what this appellate process is about, is trying to decide did Judge Quackenbush get this right or did he get it wrong? Was he right on the facts? Was he wrong on the facts? The facts here do show there's a direct contradiction. And – Okay. Talk to me about direct contradiction. Sure. We haven't discussed that at all. What is the direct contradiction here? There are – And you agree that you need a direct contradiction. Yes. Yes. We agree that we do.  So what is the direct contradiction here? The first and most obvious one and the one that the judge focused on was the difference between whether Dr. Cabins committed medical malpractice by delaying the surgery or didn't commit medical malpractice by delaying the surgery. Dr. Thalgaard in his testimony, his immunized testimony before the jury, said this was the part in his deposition where he lied to cover up to protect Dr. Cabins, that the surgery should have been done earlier than it was, and he was doing it to protect himself and Dr. Cabins. And that's at excerpts of the record 389 through 390. In Dr. Cabins 302, which is in the defense's excerpts of record at 111, he says that – he points to his deposition transcript, says he didn't do anything to harm Simon. Cabins believes that to this day. Cabins did not commit medical malpractice in his treatment of Simon. So on this core question, we have a direct contradiction. But it doesn't simply have to be a direct contradiction. It has to be a direct contradiction bearing on defendant's guilt, on Gage's guilt. So the fact that they, the two doctors, disagree with each other in various ways is interesting, but not particularly relevant. It has to be a direct contradiction bearing on Gage's guilt. And how – run this by me one more time. How is this relevant to Gage's guilt? This was the central question this jury really had to answer. Which was, was there a viable medical malpractice case that was in existence or given away? And the question as to whether the medical malpractice was viable or not turned on whether Dr. Cabins had committed malpractice or not. It would have – Mr. Gage would have been found innocent by the jury if they believed that Dr. Cabins was telling the truth. In other words, instead of having a hung jury here, if Dr. Cabins were to testify in the second trial and the jury were to believe his testimony. And what would you say? He would say, I didn't – I didn't delay – I didn't delay the – and any delay I had didn't cause any injury to Simon. The injury was because of something else. If they – if the jury believed that was true, they would have to acquit Mr. Gage because there would be no viable claim. Why? Because a doctor thinks he did okay? If they believed it. That's so unusual. Well, this was an unusual case. This was certainly an unusual case. And this was – No, but, you know, this is the most ordinary thing in the world. A doctor who screws up and says, oh, no, it wasn't me. It was somebody – it was something else. That's a contradiction. But if – I mean, it's not like the light is red versus the light is green. It was – I'm still having trouble computing how the – what this has to do. I mean, the conspiracy has to do with saying, well, look, whatever the claim against us is, we're going to throw this over and we're not going to litigate it. What does his actual malpractice or non-malpractice have to do with it? It goes to the – it goes to whether there was a viable claim or not. There were also other contradictions, Your Honor. Another contradiction – I'm sorry, but – I'm sorry. You're going to have to run this by me over again. You think the fact that the potential defendant in the malpractice case thinks he did okay makes a claim non-viable? I mean, if that were the case, you'd never have medical malpractice cases because, trust me, doctors never think they screwed up. That's my experience. But the – and the question – They always think it's the right thing, and it was somebody else's fault or the patient went sour, you know. But, Your Honor, if the jury were to believe that there wasn't medical malpractice here because Dr. Cabins was right – I'm sorry? If the jury in this criminal case were to believe that Dr. Cabins was right and Dr. Felgott was wrong, then the jury would find for Mr. Gage because they wouldn't believe there was a claim that was not pursued because of a conspiracy. I thought you were going to tell us that Dr. Cabins was uniquely positioned to contradict the conversation during the meeting that didn't happen. That's another contradiction that's in the record, Your Honor. Now, that would matter, but you didn't say that. I don't see a contradiction there. There is a difference between how they put it. Dr. – and this goes directly to the conspiracy question I think that Judge Krasinski is really asking about. During that meeting, Dr. Cabins doesn't find it to be an illegal meeting. He doesn't find anything wrong with it. He calls it a confidential meeting. And he wasn't disturbed by the – by what was occurring at the meeting. It made sense to him to tell the lawyer, here's what the facts are as we know them. When we hear the testimony of Dr. Felgott at trial, it sounds very different. At trial, he's saying basically this was the meeting that never happened. He attributes that to Mr. Gage. I'm sorry. So that's the first thing. Secret versus non-secret. Right. So Felgott says secret meeting. Correct. And you expect Cabins to say not secret meeting? He called it confidential in his statement to the government. There's a slight – It doesn't sound like a contradiction to me. It sounds like they're agreeing. There's a – it's a difference of tone, if you will. One is saying there was nothing wrong with going to this meeting. Nothing bad happened. You understand that what you need is a contradiction? It is a contradiction in terms of – And you think sort of secret meeting versus confidential is a contradiction? In addition, there is some additional – I'm asking a question. I'm sorry. You think that secret meeting versus confidential is a contradiction? The way that Dr. Felgott testified at trial, he made secret sound like it was wrong. Like it's a dirty word. Yes. It was pejorative. Okay. What else? He gave it a pejorative spin. Okay. Next. Next. Yes, Your Honor. Didn't Cabins – wouldn't Cabins have said that Gage never promised not to sue – not to sue them? That's correct, Your Honor. Was that available through any other method of proof? It was – Dr. Cabins – excuse me. Dr. Felgott did touch upon it in terms of his own testimony, but there was an additional piece that Dr. Cabins had that Dr. Felgott didn't have, which was the advice that came from the lawyer, Sherman Mayer. Dr. Cabins would have been able to testify and says in his proffer statement that he was told not to sign the tolling agreement because his lawyer told him not to do it. This ends up an open question on the record in the first trial, because Dr. Felgott doesn't know why the – why the proffer agreement wasn't. Is that a contradiction? I don't think it's a direct contradiction. I think it's testimony that would have been helpful to Mr. Gage. But that's not enough, right? Helpful isn't enough. Generally impeaching the government's case, very useful to defend. None of those things are enough. You need a witness that gets immunized and a direct contradiction by the other witness that they're not giving immunity to. Why don't you go to your next item? What else? Yes, Your Honor. I believe I have six seconds left, so I'm going to – That's okay. Just answer my question. If it's not a direct contradiction – No, no. I'm asking you – you were going down the list of contradictions. It's another contradiction, Your Honor. Yeah. The other contradiction is, and Judge Quackenbush touched upon this in his opinion, the other contradiction has to do with Mr. Venger – Dr. Venger. Dr. Venger, at the defense's excerpts of records at page 197, indicates that he had a deal with A1 and his lawyer, and he included Gage in the list. And the deal that he had was that he would not be exposed for malpractice. In return, he would send referrals of patients to A1 and get kickbacks for them. And he explained to the jury that he would find out often in the deposition that the case he had sent – that he had sent would be sent to Cabins by A1. From this, this was testimony that was relevant to the conspiracy, and frankly, this was the government's strongest evidence of any kind of conspiracy that may have existed. This testimony of Dr. Venger is obviously in contrast to the testimony that would be expected from Dr. Cabins, who says he never was a member of the conspiracy. And Venger was given use immunity? I'm sorry? He was given use immunity? Yes. Yes, it's on the record he was given use immunity. I see. So this is a contradiction with a different witness. Yes. And this was referenced in the judge's opinion. You know, you're over your time, but I just wanted to ask you real quickly. Yes, Your Honor. Did Judge Quackenbush give any rationale whatsoever for dismissing the obstruction charge, which doesn't appear to be involved in this? He didn't explain it. It was, as the Court knows from the briefs, this was something where at the end of the first trial, the government just asked that everything be pushed over to the next  And so when we had the hearing on April 30th, followed by the opinion, when the government made its request for its relief, it just asked that the indictment be dismissed. So the government did not call out the issue of the obstruction of justice charge. And the only thing I would point out to the Court is the same thing happens with regard to the other defendant. Now, there's no briefs on the other defendant. This is the A1 case. But the same thing happens in the stipulation. The whole case is thrown out absent review and change of position by this Court. So in other words, there was a parallel count in that case. It's a witness tampering count. And there, both the government and the defendants stipulated that the whole case be dismissed, waiting to see what this Court would do with regard to the case. So we have a parallel situation with both cases. Did they stipulate in this case to the dismissal of the obstruction charge? They requested the dismissal. It had a slightly different procedural posture. So they had to file something which said, you know, what's the position that the government has? And that was filed, I think, May 2nd or May 3rd. And that's where the government says, we think that the Court is wrong and we ask you to vacate the decision. But if you're not going to vacate the decision, then we agree you should dismiss the indictment. So it appears to be invited error, and that was why we indicated that in our brief. Thank you. Thank you, Your Honor. And thank you for the extra time. Briefly, Your Honor, just a real quick rundown. First of all, the Castigar burden is still there regardless of the proffer. We would still have to bring on new prosecutors in the case. We would still have to have a Castigar hearing. We would have to prove every piece of evidence was independently derived. Just the hearing alone is a severe impediment to the prosecution. With respect to the contradiction, we disagree with counsel's representation that Cabins at all contradicts Venger. Venger testified as to his dealings with Awan. He didn't testify about Cabins' dealings with Awan. And with respect to Thalgott v. Cabins, there is no contradiction there because Thalgott testified to his perceptions, what he saw, what he heard, and what he believed based on the circumstances he was confronted with. He did not testify about what Cabins thought, saw, heard, or may have interpreted. So you're saying that they talked about the same meeting and what occurred, and one had one impression of the meeting and the other had the other impression. Yes, Your Honor. They had directly contradictory impressions of what the meeting was about and what occurred. They may have different impressions about the meeting, but that doesn't mean Cabins or Thalgott is saying Cabins is wrong or Cabins is saying Thalgott is wrong. They're not justifying as to what each said or heard. They're wrong about what happened at the meeting. They drew totally different inferences from the meeting. In this case, in this record, Your Honor, they're not – there are really no differences. Thalgott testifies as to what – Well, one says, I thought it was a corrupt meeting. The other said, I thought it was a perfectly innocent meeting. Well, Thalgott didn't say it was a corrupt meeting in those words. He said he understood the purpose of the meeting was to try to convince Gage not to sue them. When he came away from the meeting, he didn't know whether it worked or not. That is not diametrically opposed to anything Cabins has to say in his 302. With respect to the – this Court's review, again, our position is, is that the district court did get it wrong in this sense, that it went into the prosecution function. And once the court is embroiled in that, there's no clear line for prosecutors. And one thing we would ask the Court, as the Court draws the distinctions here, is that prosecutors all the time are confronted with issues where they have to grant testimonial use immunity to cooperators. Does the prosecutor now have to balance for him or her whether or not they're going to have to forfeit a prosecution in the future, and under what circumstances? And how does the prosecutor supposed to make decisions without any clear lines as to whether or not they're treading into a second guess? You're overstating your case, and I don't think it's helpful to overstate your case. It's really not a choice between forfeiting a prosecution. It just makes it more difficult. You have to bring in separate prosecutors. You have to have a hearing. It's more burdensome. But you really, under none of these scenarios, are you asked to forfeit another prosecution. And, you know, by overstating a case, you're just – I didn't mean to overstate. It doesn't help your credibility at all. I understand that. You're setting up this false choice, and all of those say, well, no, he's wrong about that, so. No, Your Honor. Why don't you talk about what is really at stake rather than what's not? Well, my point was, and Your Honor is correct, I didn't mean if I overstated or appeared to overstate, I apologize. No, you did overstate. Everybody heard you. You said forfeit, you know, a prosecution. You really don't mean that. You don't want to overstate stuff like that. Right. Everybody knows it's not true. What I meant to say, Your Honor, was that it would be a severe impediment to a prosecution from a practical standpoint. The Court's absolutely correct. From a theoretical standpoint, yes, these cases could be prosecuted. But as this Court knows, as a practical matter, it just doesn't happen. Well, as a practical matter, you could have indicted him instead of just calling him a target. Your Honor, the reasons why we didn't – what's on this record is that the government stated that Kavens was still undergoing investigation. That's – and that's the record reason as to why he wasn't indicted. Well, I mean, that covers a multitude of sins. I don't know if you're working on the case every day, you know, tracking him around, or you just decide you're not going to file it until after Gage's case. Well, Your Honor, these are, again, the issues that we would get into if we were going to delve into the prosecutorial decisions behind the prosecution. I'm suggesting if you really wanted to preserve going after Kavens, you could have indicted him back when you sent the target letter. Your Honor, the – there are a number of factors. First of all, we're getting ready for trial in Gage, so it would be very difficult to run an investigation. Okay, but that's how you do it. That's how you protect yourself is what I'm saying. Your Honor, but that shouldn't be the reason for a prosecutorial decision. A charging decision should be made because the quantum of evidence is sufficient, we have sufficient resources to do it, and that there is a good justification, a good law enforcement purpose for going forward. So all – those are the reasons why a prosecutor should indict, not because they need to, quote, protect themselves against the subsequent event. Okay. Thank you, Your Honor. Okay, thank you. All right. I'm sorry. We'll pass a minute.
judges: Kozinski, Reinhardt, Silverman